## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| **CYNTHIA MOWERY** | * | |
| 154 Irishtown Road | | |
| North East, Maryland 21901 | * | **CASE NO.:** _____ |
| | | |
| and | * | |
| | | |
| **BRIAN S. ALEXANDER** | * | |
| 1267 Holtwood Road | | |
| Holtwood, Pennsylvania 17532 | * | **JURY DEMAND** |
| | | |
| Plaintiffs | * | |
| | | |
| v. | * | |
| | | |
| **BARRY SMITH** | * | |
| Defense Tactical Instructor | | |
| Eastern Shore Criminal Justice Academy | * | |
| 3408 Vineyard Drive | | |
| East New Market, Maryland 21631 | * | |
| | | |
| and | * | |
| | | |
| **DONALD ROLLYSON** | * | |
| Assistant Director | | |
| Eastern Shore Criminal Justice Academy | * | |
| Wor-Wic Community College, Inc. | | |
| 32000 Campus Drive | * | |
| Salisbury, Maryland 21804 | | |
| | * | |
| and | * | |
| | | |
| **JOHN C. MOSES** | * | |
| Director | | |
| Eastern Shore Criminal Justice Academy | * | |
| Wor-Wic Community College, Inc. | | |
| 32000 Campus Drive | * | |
| Salisbury, Maryland 21804 | | |
| | * | |
| and | * | |
| | | |
| **WOR-WIC COMMUNITY COLLEGE, INC.** | | |
| 32000 Campus Drive | | |
| Salisbury, Maryland 21804 | * | |

Serve:  Registered Agent                    *
        Murray K. Hoy, President
        Wor-Wic Community College
        32000 Campus Drive             *
        Salisbury, Maryland 21804
                                       *

Defendants                             *

                                       *

## COMPLAINT FOR DAMAGES AND JURY TRIAL

Plaintiffs, Cynthia Mowery and Brian S. Alexander, by and through their undersigned

counsel James L. Otway, Esquire, Kristin N. Gilbert, Esquire and Otway Russo, P.C. file this

complaint against Wor-Wic Community College, Barry Smith, Donald Rollyson and John C.

Moses and as grounds state as follows:

### PARTIES

1.      **CYNTHIA MOWERY** is a citizen of the United States and an adult resident of

the State of Maryland.

2.      **BRIAN S. ALEXANDER** is a citizen of the United States and an adult resident

of the State of Pennsylvania.

3.      Defendant, **BARRY SMITH,** is an individual who lives in Dorchester County

and works in Wicomico County, Maryland.  Mr. Smith was, at all times relevant hereto, an

employee of Wor-Wic Community College, Inc., acting within the scope of such employment

and more specifically was the Defense Tactical Instructor of the Eastern Shore Criminal Justice

Academy at the College.

4.      Defendant, **DONALD ROLLYSON**, is an individual who works in Wicomico

County.  Mr. Rollyson was, at all times relevant hereto, an employee of Wor-Wic Community

College, Inc., acting within the scope of such employment and more specifically was the Assistant Director of the Eastern Shore Criminal Justice Academy at the College.

5.     Defendant, **JOHN C. MOSES**, is an individual who works in Wicomico County. Mr. Moses was, at all times relevant hereto, an employee of Wor-Wic Community College, Inc., acting within the scope of such employment and more specifically was the Director of the Eastern Shore Criminal Justice Academy at the College.

6.     Defendant, **WOR-WIC COMMUNITY COLLEGE, INC.** (hereinafter "Wor-Wic") is a Maryland Corporation which maintains its principal place of business in Wicomico County, Maryland.

JURISDICTION AND VENUE

7.     This Court has jurisdiction over the controversy pursuant to 28 USC §1332, as the Parties are diverse in citizenship (Alexander) and the amount in controversy exceeds the minimum jurisdictional limit of the Court. The Court has additional subject matter jurisdiction over Plaintiff Mowery's claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. §1367. The Court has personal jurisdiction over all the Defendants as they are residents of the State of Maryland and this judicial district.

8.     Pursuant to 28 U.S.C. § 1391(a)(2), venue is appropriate in this Court as all of the events that give rise to the Complaint occurred within this judicial district and all of the Defendants work therein as well.

FACTS COMMON TO ALL COUNTS

9.     WOR-WIC Community College, Inc. (Wor-Wic) is a Maryland Corporation which maintains its principal place of business in Wicomico County, Maryland. Wor-Wic is a

"local government" within the meaning of the Maryland Local Government Tort Claims Act, Maryland Courts and Judicial Proceedings Article 5-301 (d).

10.     Prior hereto, Plaintiffs each complied with the Maryland Local Government Tort Claims Act by providing timely written notice to Wor-Wic by certified mail on October 27, 2017, (Mowery) and on August 1, 2018 (Alexander).

11.     Wor-Wic, as part of its criminal justice department and curriculum, maintains and operates the Eastern Shore Criminal Justice Academy (hereinafter "ESCJA") which provides training to law enforcement recruits and cadets at its campus in Salisbury, Maryland.

12.     Wor-Wic employed all of the above captioned individual Defendants at all times relevant to this suit, and the acts and omissions complained of herein were in the course and scope of the employment of each Defendant.

13.     All the non-constitutional or non-federal statutory claims asserted herein arise out of the design, implementation and maintenance of the Defensive Tactics curriculum taught as part of the Academy and most specifically related to the boxing component segment of the course, and additionally arise out of the failures of Defendants to take adequate and necessary precautions to prevent traumatic brain injuries in recruits participating in the defense tactics course; to train employees to recognize the signs and symptoms of traumatic brain injuries; and to evaluate injured recruits for concussions and other brain injuries.

14.     Defendant Barry Smith was hired in or around 1990 to work teaching in-service classes at ESCJA at Wor-Wic.

15.     The ESCJA at Wor-Wic does not maintain a personnel file for Defendant Smith, and there is no record of any investigation of Defendant Smith prior to being hired by ESCJA at Wor-Wic.

16.     Prior to being hired at Wor-Wic, Defendant Smith had left the Maryland State Police, having been given the opportunity to resign, amidst allegations of insurance fraud and sexual relations with recruits.

17.     In or about 2004, Defendant Smith was named the head defensive tactics instructor at ESCJA by Defendant Moses.

18.     Defendant Moses did not conduct any background check of Defendant Smith nor did he speak with Maryland State Police regarding Defendant Smith's qualifications as an instructor prior to hiring Defendant Smith as head defensive tactics instructor at ESCJA.

19.     Defendants Smith and Moses developed the present defensive tactics program which was in effect at all relevant times hereto.

20.     Defendant Smith was certified as an instructor in defensive tactics in or about 1982.

21.     Defendant Smith has not taken any courses or received any additional certifications since leaving the Maryland State Police in or about 1989 and had not had any retraining in fifteen years prior to being hired by Moses.

22.     Defendant Smith has never received any formal instruction in boxing outside of his martial arts training and his initial training at the Maryland State Police academy to become an officer in or around 1975.

23.     Defendant Smith has never received any formal training on how to teach a boxing program.

24.     Defendant Smith does not have any certifications in first aid, and his only course in first aid was completed in or about 1975 during his training at the Maryland State Police academy to become an officer, which was almost thirty years before being hired by Defendant

Moses. Defendant Smith has never had any training in recognition, evaluation or prevention of head injuries.

25.     Defendant Smith has never had any training as an instructor to train recruits/recruits in confrontational situations.

26.     Prior to the injuries which are the subject of this Complaint, numerous injuries, including a serious traumatic brain injury, occurred during the boxing portion of the ESCJA program under the direction of Defendant Smith and under the supervision of Defendants Moses and Rollyson. One prior recruit suffered a permanent brain injury which was career ending.

27.     During the period of time that Defendant Smith has been an instructor at the ESCJA at Wor-Wic, Defendant Smith has never gone to any other police academies to observe their defensive tactics courses.

28.     Passage of the defensive tactics portion of the ESCJA at Wor-Wic at all times relevant hereto was a subjective decision made entirely by Defendant Smith without any objective criteria or scoring methodology used to make the determination.

29.     While employed with the Maryland State Police, Defendant Smith was a defensive tactics instructor from approximately 1983 to 1986.

30.     While a defensive tactics instructor for the Maryland State Police, Defendant Smith engaged in sexual relations with female recruits.

31.     In January 2017, Cynthia Mowery, a successful applicant to the Elkton Police Department, was sent by the Elkton Police Department to the Eastern Shore Criminal Justice Academy, a Wor-Wic Community College program, for entrance-level law enforcement training.

32.     On May 17, 2017, near the completion of the Academy, Mowery was required to participate in five fight practical scenarios in succession.

33.     Plaintiff was required to engage only in physical combat, specifically boxing related combat. Plaintiff was permitted to only wear boxing gloves and minimal head padding, whereas, the opponents (who were current police officers) wore a padded "red man" suit complete with protective head gear and metal facial mask.

34.     In the first and second scenarios, Mowery sustained multiple punches to her head and face. In the fourth scenario, she again received several hard blows to the head. In the fifth scenario, Mowery received several punches to her head, was knocked down twice, and got up to keep fighting.

35.     Upon information and belief, Rollyson and Moses were observing the fight practical scenarios.

36.     At the conclusion of the five fight practical scenarios, Smith told Mowery that she had failed.

37.     Also following the conclusion of the five fight practical scenarios, Smith consulted with the observers believed to include Defendants Rollyson and Moses.

38.     Smith returned and told Mowery that she had sustained too many blows to the head, so she would need to wait a week to try the fight practical scenarios again.

39.     Neither Smith nor any other employee, servant, or agent of Wor-Wic performed any evaluation of Mowery for brain injury during or after any of the five fight practical scenarios, despite known and multiple hits to the head.

40.     Neither Smith nor any other employee, servant, or agent of Wor-Wic recommended or assisted Mowery in obtaining medical evaluation and treatment during or after any of the five fight practical scenarios, despite recognizing that she had been hit numerous times in the head.

7

41.     Following the fight practical scenarios on May 17, 2017, Mowery began experiencing dizziness, headaches, and difficulty sleeping.

42.     The following week Mowery was scheduled to re-do the fight practical scenarios. Despite the known hits to her head the prior week, neither Smith nor any other employee, servant, or agent of Wor-Wic evaluated Mowery at any time for brain injury.

43.     On May 25, 2017, Mowery felt her only option was to resign from the Academy.

44.     During this course of required fighting, Mowery sustained a serious brain injury and other injuries and damages caused by Wor-Wic and its agents' failures to employ a safe and reasonable program of training for recruits with adequate, proper, and reasonable supervision, and continuing the program, without change or modification, after prior students suffered the same or similar injuries. Mr. John Moses, Mr. Smith, and Mr. Donald Rollyson were all aware of the prior injuries from this program and failed and refused to take action to eliminate or reduce the risk of serious bodily and/or brain injury.

45.     In addition to the brain injury sustained by Mowery, Mowery was also sexually harassed and discriminated against by Smith on the basis of sex. The harassment and discrimination was continuous and repeated from the beginning the Academy through the date of Mowery's departure from the Academy on May 25, 2017.

46.     Repeated statements made by Smith to Mowery throughout the Academy included: "Why don't you go be a model somewhere. I've watched how you walk across the floor. You will never make it."; "Why don't you go be a meter maid – they will give you a uniform."; "I won't pass you."

47.     On May 12, 2017, a female officer believed to have been from Ocean Pines who is believed to have been a volunteer agent of Wor-Wic also stated "your looks will not get you

through this" and further told Mrs. Mowery she needed a new profession and asked whether she was married and had children.

48.     On May 11, 2017, while in the gymnasium during defensive tactics, Mrs. Mowery asked if her hand placement was correct for the particular drill.  Defendant Smith stated that he knew what Mrs. Mowery's problem was and he proceeded to obtain duct tape, rip a piece of duct tape off of the roll, and then placed the piece of duct tape over Mrs. Mowery's mouth.  He told her she needed to shut up.  He required her to wear the duct tape over her mouth for approximately thirty minutes while completing the defensive tactics training prior to break.

49.     During the Academy, Mrs. Mowery was subjected to several physical injuries caused by Barry Smith.  On one occasion during the Academy, Barry Smith grabbed Mrs. Mowery and pulled her face to his chest, resulting in a cut on her cheek from his zipper and subsequent scar on her face.  On March 31, 2017, while in the gymnasium, Mr. Smith struck Mrs. Mowery's peroneal nerve resulting in injury.  During the afternoon of May 11, 2017, (following the duct tape incident), instruction was being given on pain compliance.  Mrs. Mowery was paired with a heavy male recruit as her partner.  Mr. Smith did not think that Mrs. Mowery's partner caused her enough pain.  While Mrs. Mowery was lying on her stomach in prone position, Mr. Smith put his right knee on Mrs. Mowery's left triceps muscle and his left knee on the back of her neck.  Mr. Smith ignored Mrs. Mowery's screams and attempts to tap out and continued to apply pressure.  She sustained significant injury to her arm.

50.     On May 20, 2017, Mrs. Mowery participated in the active shooter scenario.  Mr. Smith, Mr. Rollyson, and other employees, agents, and/or servants or Wor-Wic had no intention of ever allowing Mrs. Mowery to graduate from the Academy.  She was discriminated against and deemed to fail the active shooter scenario while at the same time a male recruit passed the

active shooter scenario despite having "shot" another police officer during the scenario (Mrs. Mowery did not shoot another police officer in the scenario).

51.     Brian Alexander graduated in May of 2017 from Harrisburg Community College in Harrisburg, Pennsylvania. He received an associate degree in Criminal Justice, maintaining a 3.9 cumulative grade point average. He successfully applied for a summer position with the Ocean City, Maryland Police Department, which he began in May 2017. Not long after starting with the Ocean City Police Department ("OCPD"), he was offered a position as a full-time officer which he accepted. As part of his qualification training, he was sent by the OCPD to the Eastern Shore Criminal Justice Academy at Wor-Wic for entrance-level law enforcement training.

52.     He began his studies there in July of 2017 and did well in both the academic and practical training. On August 10, 2017, Brian Alexander was participating in boxing, a component of Defensive Tactics, under the instruction of Defense Tactical Instructor Barry Smith. Alexander was ordered to box a classmate while each were on their knees. Barry Smith instructed the class to use full force. During the boxing, Alexander was struck in the head.

53.     Immediately after the boxing, Alexander sat on the mat and lost consciousness.

54.     Neither Smith nor any other employee, servant, or agent of Wor-Wic performed any evaluation of Alexander for brain or other injury during or after the boxing, despite knowing Alexander had been struck in the head and had lost mobility. Finally, another student in the class called 911. EMS arrived approximately ten (10) minutes later. They found Mr. Alexander in a seated position leaning against some mats and unresponsive with fixed and dilated pupils. No information was given to the EMTs by the Smith or Wor-Wic personnel other than his name and approximate age.

55.     Brian Alexander was taken by ambulance to Peninsula Regional Medical Center in Salisbury, Maryland where initial diagnostic testing revealed that he had suffered a large subdural hematoma (brain bleed). Mr. Alexander underwent surgical decompression of the brain and regained consciousness thereafter.

56.     Although Mr. Alexander regained consciousness, he has been left with permanent neurological and cognitive deficits. He sustained a permanent, career ending brain injury. His deficits will preclude him from working in the criminal justice field for which he trained. He will suffer life long economic losses.

57.     During this course of required boxing, Mr. Alexander sustained a serious brain injury and other injuries and damages caused by Wor-Wic and its agents' failures to employ a safe and reasonable program of training for recruits with adequate, proper, and reasonable supervision, and continuing the program after prior students suffered the same or similar injuries. Mr. John Moses, Mr. Smith, and Mr. Donald Rollyson were all aware of the prior injuries from this program and failed and refused to take action to modify the program or to reduce or eliminate the risk of serious bodily and/or brain injury.

58.     Defendants have been on notice that the Defensive Tactics program under the instruction of Barry Smith has resulted in numerous injuries, including a career-ending permanent traumatic brain injury suffered by a recruit during the boxing portion of the defensive tactics course taught by Smith in 2013.

## COUNT I - NEGLIGENCE
### (*Cynthia Mowery v. Barry Smith*)

59.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 44 and paragraph 58 of this Complaint with the same effect as if set forth fully herein.

60.     At all times relevant hereto, Defendant Barry Smith owed a duty to Ms. Mowery, and other students of the Eastern Shore Criminal Justice Academy to exercise reasonable care in the design, implementation and execution of the training program, to provide a safe course structure and environment for the program's participants, to retain and use only competent, well trained and evaluated instructors and to take immediate action to evaluate all potential or suspected injuries to the program's trainees and to not expose students to the unnecessary risk of serious injury.

61.     Defendant breached this duty by, among other things, subjecting Plaintiff to a program which was negligently designed and implemented; failing to take appropriate action to evaluate the nature and extent of Mowery's injuries after suffering repeated head strikes; and failing to adequately and appropriately design and implement a reasonably safe program for the active countermeasures and defense tactics components of the curriculum.

62.     Defendant's breach was done with reckless disregard, and/or utter indifference to the consequences as affecting the life and well-being of the Plaintiff.

63.     The aforementioned acts and omissions by the Defendant proximately caused Plaintiff to suffer serious injuries, including a permanent brain injury.

64.     As a further direct and proximate result of the acts and omissions of the Defendant, Plaintiff was caused to incur expenses for medical care and treatment, lost wages,

lost earning capacity, as well as other economic and non-economic damages, and will continue to incur damages into the future.

WHEREFORE, Plaintiff Cynthia Mowery demands judgment against Defendant, Barry Smith, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages together with such other and further relief as this Court may deem just.

## COUNT II - NEGLIGENCE
*(Brian Alexander v. Barry Smith)*

65. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 64 of this Complaint with the same effect as if set forth fully herein.

66. At all times relevant hereto, Defendant Barry Smith owed a duty to Brian Alexander, and other students of the Eastern Shore Criminal Justice Academy to exercise reasonable care in the design, implementation and execution of the training program, to provide a safe course structure and environment for the program's participants, and to take immediate action to evaluate all potential or suspected injuries to the program's trainees and to not expose students to unnecessary risks of serious injury.

67. Defendant breached this duty by, among other things, subjecting Plaintiff to a program which was negligently designed; requiring the Plaintiff to engage in a training practice that was dangerous and unnecessarily exposed the Plaintiff to an unreasonable risk of serious injury; failing to take appropriate action to evaluate the nature and extent of Alexander's injuries after suffering head strikes; failing to adequately and appropriately design and implement a reasonably safe program for the active countermeasures and defense tactics components of the curriculum.

68.     Defendant's breach was done with reckless disregard, and/or utter indifference to the consequences as affecting the life and well-being of the Plaintiff.

69.     The aforementioned acts and omissions by the Defendant proximately caused Plaintiff to suffer serious injuries, including a permanent brain injury.

70.     As a further direct and proximate result of the acts and omissions of the Defendant, Plaintiff was caused to incur expenses for medical care and treatment, lost wages, lost earning capacity, as well as other economic and non-economic damages, and will continue to incur damages.

WHEREFORE, Plaintiff Brian Alexander demands judgment against Defendant, Barry Smith, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages and together with such other and further relief as this Court may deem just.

COUNT III - NEGLIGENCE
(*Cynthia Mowery v. John C. Moses and Donald Rollyson*)

71.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 44 and paragraphs 58 through 65 of this Complaint with the same effect as if set forth fully herein and for a further cause of action against Defendants Moses and Rollyson states as follows:

72.     At all times relevant hereto, Defendants Moses and Rollyson were employees of Wor-Wic acting within the scope of their employment. At the time of Plaintiff's injury, Defendants Moses and Rollyson, as Director and Assistant Director of the Eastern Shore Criminal Justice Academy, had a duty and responsibility to Plaintiff and others to design, maintain and administer a course, curriculum and program for law enforcement trainees which did not unreasonably expose such students and trainees to danger and injury. Defendants Moses

14

and Rollyson breached that duty and were negligent in numerous ways, including but not limited to: designing and maintaining a curriculum and program which permitted and encouraged full force boxing bouts with head strikes; maintaining a curriculum and program without adequate safety precautions to both prevent brain injury and to be vigilant for signs and symptoms of head injury in trainees; maintaining a curriculum and program which permitted serious head injuries to go unrecognized or disregarded; maintaining a program with inadequate supervision of qualified instructors to ensure the safety of trainees and being otherwise negligent.

WHEREFORE, Plaintiff Cynthia Mowery demands judgment against Defendants, Moses and Rollyson, jointly and severally with each other and with Defendant Smith in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages, together with such other and further relief as this Court may deem just.

### COUNT IV - NEGLIGENCE
*(Brian Alexander v. John C. Moses and Donald Rollyson)*

73.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 72 of this Complaint with the same effect as if set forth fully herein and for a further cause of action against Defendants Moses and Rollyson states as follows:

74.     At all times relevant hereto, Defendants Moses and Rollyson were employees of Wor-Wic acting within the scope of their employment. At the time of Plaintiff's injury, Defendants Moses and Rollyson, as Director and Assistant Director of the Eastern Shore Criminal Justice Academy, had a duty and responsibility to Plaintiff and others to design, maintain and administer a course, curriculum and program for law enforcement trainees which did not unreasonably expose such students and trainees to danger and serious injury. Defendants Moses and Rollyson breached that duty and were negligent in numerous ways, including but not

limited to: designing and maintaining a curriculum and program which permitted and encouraged full force boxing bouts with repeated head strikes; maintaining a curriculum and program without adequate safety precautions to both prevent brain injury and to be vigilant for signs and symptoms of head injury in trainees; maintaining a curriculum and program which permitted serious head injuries to go unrecognized or disregarded; maintaining a program with inadequate supervision by unqualified instructors to ensure the safety of trainees and being otherwise negligent.

WHEREFORE, Plaintiff Brian Alexander demands judgment against Defendants, Moses and Rollyson, jointly and severally with each other and with Defendant Smith in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages, together with such other and further relief as this Court may deem just.

COUNT V - NEGLIGENCE (HIRING/RETENTION)
*(Cynthia Mowery v. Wor-Wic Community College, John C. Moses and Donald Rollyson)*

75.     Plaintiff incorporates herein by reference, all of the allegations of Paragraphs 1 through 50 and paragraphs 58 through 64 and paragraphs 71 through 74 above, as fully as if said allegations had been repeated at length herein.

76.     The Defendants owed a duty to Plaintiff to act reasonably and to take reasonable measures to prevent exposure of the Plaintiff to any needless risk of danger and to investigate and determine the background, training and qualifications of employees hired by it.

77.     Defendants owed a duty to Plaintiff and the public to hire and retain qualified and reasonable employees.  Defendants owed a duty to Plaintiff and the public to take reasonable measures to ensure that employees and agents hired and retained by them have adequate and current training and knowledge.

78.     Defendants failed to investigate Defendant Smith's background prior to hiring him.

79.     Defendants owed a duty to the Plaintiff and the public to take reasonable corrective and safety measures when placed on notice of conduct by its employees, inappropriate teaching tactics and behavior by its employees, and lack of training, knowledge, and evaluation of injuries of students by its employees, and to refrain from allowing the conduct to continue without adequate supervision, oversight or training.

80.     Defendants failed to investigate complaints made against Defendant Smith.

81.     Defendants failed to investigate injuries reported by recruits while under the instruction of Defendant Smith.

82.     Defendants were on notice that the Defense Tactics portion of the curriculum, specifically related to boxing and repeated head strikes, as administered by Barry Smith, was negligently designed and dangerous. At all relevant times, Barry Smith was acting as an agent and employee under the control of Defendants.

83.     Defendants breached their duty to the Plaintiff by retaining Barry Smith and the boxing program, specifically as it included full force boxing with head strikes without taking any precautions to prevent brain injuries and their evaluation, and allowing him and the program to endanger Plaintiff, without any reasonable or safe supervision.

84.     Defendants' breach of duty caused actual and proximate damages to Plaintiff when she suffered a brain injury.

85.     As a direct and proximate result of Defendants' breach of duty, Plaintiffs suffered serious personal injuries, mental anguish, and special damages, including permanent economic and non-economic losses.

WHEREFORE, Plaintiff Cynthia Mowery demands judgment against Defendants, Wor-Wic, Moses and Rollyson, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages together with such other and further relief as this Court may deem just.

## COUNT VI - NEGLIGENCE (HIRING/RETENTION)
*(Brian Alexander v. Wor-Wic Community College, John C. Moses and David Rollyson)*

86.     Plaintiff incorporates herein by reference, all of the allegations of Paragraphs 1 through 85 above, as fully as if said allegations had been repeated at length herein.

87.     The Defendants owed a duty to Plaintiff to act reasonably and to take reasonable measures to prevent exposure of the Plaintiff to any needless risk of danger and to investigate and determine the background, training and qualifications of employees hired by it.

88.     Defendants owe a duty to Plaintiff and the public to hire and retain reasonable employees. Defendants owe a duty to Plaintiff and the public to take reasonable measures to ensure its employees and agents have adequate training and knowledge.

89.     Defendants failed to investigate Defendant Smith's background prior to hiring him.

90.     Defendants owe a duty to the Plaintiff and the public to take reasonable corrective and safety measures when placed on notice of conduct by its employees, inappropriate teaching tactics and behavior by its employees, and lack of training, knowledge, and evaluation of injuries of students by its employees, and to refrain from allowing the conduct to continue without adequate supervision or oversight or training.

91.     Defendants failed to investigate complaints made against Defendant Smith.

92.     Defendants failed to investigate injuries reported by recruits while under the instruction of Defendant Smith.

93.     Defendants were on notice that the Defense Tactics portion of the curriculum, specifically related to boxing with repeated head strikes, as administered by Barry Smith was negligently designed and dangerous.  At all relevant times, Barry Smith was acting as an agent and employee under the control of Defendants.

94.     Defendants breached their duty to the Plaintiff by retaining Barry Smith and the boxing program, specifically as it included full force boxing with repeated head strikes without taking any precautions for the prevention or evaluation of brain injuries, and allowing him and the program to endanger Plaintiff, without any reasonable or safe supervision.

95.     Defendants' breach of duty caused actual and proximate damages to Plaintiff when he suffered a brain injury.

96.     As a direct and proximate result of Defendants' breach of duty, Plaintiffs suffered serious personal injuries, mental and physical pain and suffering, economic and non-economic damages, some of which are permanent, and loss of a career for which he was educated and trained.

WHEREFORE, Plaintiff Brian Alexander demands judgment against Defendants Wor-Wic Moses and Rollyson, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages together with such other and further relief as this Court may deem just.

COUNT VII – VIOLATION OF TITLE IX OF THE
EDUCATION AMENDMENTS OF 1972
(20 U.S.C. 1681 – Disparate Treatment)
(Cynthia Mowery v. Wor-Wic Community College)

97.     Plaintiff incorporates herein by reference all of the allegations of Paragraphs 1 through 50 above as fully as if said allegations had been repeated herein.

98.     At all relevant times, Plaintiff had a right to be free from being subjected to discrimination under an education program receiving Federal financial assistance on the basis of sex. Defendant Wor-Wic is an entity that offers educational programs and activities and receives federal financial assistance as defined in 20 U.S.C. §1681 (a) and 34 C.F.R. §106.2.

99.     Plaintiff was treated differently from her fellow male recruits on the basis of sex.

100.    The defensive tactics course and passage thereof was subjectively determined by Defendant Smith without any objective criteria.

101.    Defendant Smith never had any intention of allowing Plaintiff Mowery to pass the defensive tactics course.  On multiple occasions, Defendant Smith made comments to Plaintiff Mowery relevant to her sex, her looks, and further specifically stated he wouldn't allow her to pass the course.

102.    Defendant Smith put duct tape over Plaintiff Mowery's mouth after she asked a question during defensive tactics class, and Defendant Smith required Plaintiff Mowery to wear duct tape over her mouth for approximately thirty minutes of defensive tactics training.

103.    During the active shooter scenario, Defendant Rollyson told Plaintiff Mowery that she had failed, yet, a fellow male recruit, who shot a "fellow officer" during the active shooter scenario passed. Plaintiff Mowery did not shoot a "fellow officer" during the active shooter scenario, nor was she shot.

104.   Plaintiff Mowery was systematically caused to fail the program due to Defendants' subjective beliefs that due to her sex and traditionally feminine appearance that Plaintiff Mowery should not be a police officer.

105.   As a direct result of the Defendants' actions, Plaintiff was harmed and suffered and continues to suffer, and she has incurred both economic and non-economic damages.

WHEREFORE, Plaintiff Cynthia Mowery demands judgment against Defendant, Wor-Wic Community College, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages and an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in punitive damages together with such other and further relief as this Court may deem just, including but not limited to an award of reasonable attorneys' fees and costs.

COUNT VIII – VIOLATION OF TITLE IX OF THE
EDUCATION AMENDMENTS OF 1972
(20 U.S.C. 1681 – Sexual Harassment)
(*Cynthia Mowery v. Wor-Wic Community College*)

106.   Plaintiff incorporates herein by reference all of the allegation of Paragraphs 1 through 50; 58 through 64; 71 through 72; 75 through 85; and 97 through 105 above as fully as if said allegations had been repeated herein.

107.   At all relevant times, Plaintiff had a right to be free from being subjected to discrimination under an education program receiving Federal financial assistance on the basis of sex.

108.   Prior to Ms. Mowery entering the class at Wor-Wic, others had made complaints to Wor-Wic regarding Defendant Smith and his treatment of female recruits.  Examples of the prior known different treatment included:  additional boxing for the female recruit after the boxing portion of the program had completed; instruction to opposing boxer of the female recruit

21

to target the female recruit's ribs which Defendant Smith knew to be injured; statements by Defendant Smith to the female recruit that she "would never pass his class, no matter what"; Defendant Smith purposefully groping and fondling female recruits claiming the behavior to be showing examples of "what not to do" during a search; Defendant Smith often called female recruits "bitches".

109.    A prior female recruit made the complaints to her police Chief who spoke with Defendant Smith.

110.    Defendant Smith then informed Defendants Moses and Rollyson about the allegations from the female recruit.

111.    No investigation was conducted by Defendants Moses or Rollyson.

112.    Defendants Moses and Rollyson had actual knowledge of prior sex based discriminatory complaints against Defendant Smith and were consciously indifferent to them.

113.    The defensive tactics course and passage thereof was determined by Defendant Smith without any objective criteria.

114.    Defendant Smith never had any intention of allowing Plaintiff Mowery to pass the defensive tactics course.  On multiple occasions, Defendant Smith made comments to Plaintiff Mowery relevant to her sex, her looks, and further specifically stated he wouldn't allow her to pass the course.

115.    Repeated statements made by Smith to Mowery throughout the Academy included: "Why don't you go be a model somewhere.  I've watched how you walk across the floor. You will never make it."; "Why don't you go be a meter maid – they will give you a uniform."; "I won't pass you."

116.    On May 12, 2017, a female officer believed to have been from Ocean Pines who is believed to have been a volunteer agent of Wor-Wic also stated "your looks will not get you through this" and further told Mrs. Mowery she needed a new profession and asked whether she was married and had children.

117.    Defendant Smith put duct tape over Plaintiff Mowery's mouth after she asked a question during defensive tactics class, and Defendant Smith required Plaintiff Mowery to wear said duct tape over her mouth for approximately thirty minutes of defensive tactics training.

118.    Defendants Moses and Rollyson further had personally observed acts of sex-based discrimination by Defendant Smith and other agents of Wor-Wic against Plaintiff Mowery.

119.    Defendants Moses and Rollyson took no action on this information and were deliberately indifferent to the sex-based discrimination.

120.    As a direct result of the Defendants' actions, Plaintiff was harmed and suffered and continues to suffer, and she has incurred both economic and non-economic damages.

WHEREFORE, Plaintiff Cynthia Mowery demands judgment against Defendant, Wor-Wic Community College, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages together with such other and further relief as this Court may deem just, including but not limited to an award of reasonable attorneys' fees and costs.

COUNT IX - VIOLATION OF 42 U.S.C. Section 1983
(Damages – Equal Protection)
(*Cynthia Mowery v. Barry Smith, Donald Rollyson, John C. Moses*)

121.    Plaintiff incorporates herein by reference all of the allegations of Paragraphs 1 through 50; 58 through 64; 71 through 72; 75 through 85; and 97 through 120 above as fully as if said allegations had been repeated herein.

122.    At all relevant times, Plaintiff had a right under the equal protection clause of the Federal and Maryland State Constitutions not to be deprived of her constitutional rights and to be free from sex-based discrimination. Acting under the color of state law, Defendants violated her rights by failing her in certain courses at the ESCJA and by treating her differently and unfairly from her male counterparts [and from female counterparts who were less traditionally feminine] solely on the basis of her sex [and her looks], thus denying her equal protection under both state and federal law.

123.    Defendants Moses and Rollyson had actual and/or constructive knowledge of Defendant Smith's conduct which posed an unreasonable risk of constitutional injury to citizens like Plaintiff Mowery and did in fact cause constitutional injury to Plaintiff Mowery.

124.    Defendants Moses and Rollyson took no action and conducted no investigation into the past conduct of Defendant Smith, including but not limited to Defendant Smith's sexual relations with recruits at his former employment and complaints regarding Defendant Smith and his conduct as it related to female recruits while at ESCJA at Wor-Wic.

125.    The lack of reasonable response by Defendants Moses and Rollyson to Defendant Smith's conduct was causally linked to the sex-based discrimination suffered by Plaintiff Mowery.

126.    As a direct result of the Defendants' actions, Plaintiff was harmed and suffered and continues to suffer, and she has incurred both economic and non-economic damages.

127.    The conduct of Defendants was reckless or callously indifferent to the rights of the Plaintiff.

WHEREFORE, Plaintiff Cynthia Mowery demands judgment against Defendant, Barry Smith, John Moses, Donald Rollyson, jointly and severally in an amount in excess of Seventy-

Five Thousand Dollars ($75,000.00) in compensatory damages and an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in punitive damages together with such other and further relief as this Court may deem just, including but not limited to an award of reasonable attorneys' fees and costs.

Date:  March ___, 2019

James L. Otway, Esquire
(Federal Bar #22717)
jotway@otwayrusso.com

Kristin N. Gilbert, Esquire
(Federal Bar #18426)
kgilbert@otwayrusso.com

OTWAY RUSSO, P.C.
108 West Main Street
Salisbury, Maryland 21801
Telephone 410-749-3900
Facsimile 410-749-8577
*Attorneys for Plaintiffs*